IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NORMA I. MAYSONET ROBLE, ET ALS    *
                                   *
      Plaintiffs                   *
                                   *
      v.                           *    CIVIL NO. 97-1036 (GG)
                                   *
ANTONIO J. CABRERO, as Trustee for *
Urban Renewal and Housing Corp. PR *
                                   *
      Defendants                   *
* * * * * * * * * * * * * * * * * **

## OPINION AND ORDER

We must determine whether an agency of the Commonwealth of
Puerto Rico (the Commonwealth), who at midstream of the case became
the successor in interest of the assets of the defendant, may
successfully assert a defense which the defendant could not invoke,
namely, the protection of the Eleventh Amendment of the U.S.
Constitution.

## BACKGROUND

The above captioned action was brought to this court as a class
action against the Special Trustee of the Office for the Liquidation
of the Accounts of the Puerto Rico Urban Renewal and Housing
Corporation. **See**, Amended Complaint, docket entry #21. The proposed
class is composed by all the persons who bought or leased from the
defunct Puerto Rico Urban Renewal and Housing Corporation (CRUV) any

3

**CIVIL NO. 97-1036 (GG)**                                                    2

low income housing units in "Residencial Villa Evangelina" on the outskirts of Manatí, Puerto Rico, which contain asbestos-based products and/or lead-based paint and materials. The plaintiffs claim that the CRUV failed to observe its duty to ensure that the plaintiffs were safe and that they were not affected economically due to its action. Specifically, they assert that the CRUV breached an implied warranty of habitability due to the circumstances surrounding the asbestos and lead-based paint. Moreover, that the CRUV was aware of the fact that the properties for rent or purchase contained hazardous substances yet it failed to disclose their presence to prospective and eventual tenants and/or buyers. Last but not least, pursuant to 42 U.S.C. §§1983 & 1985 they claim that their civil rights have been violated.

Although as of today the defendant has not answered the complaint, it has filed three motions to dismiss. The first two motions were solved by Judge Carmen C. Cerezo, to whom the case was originally assigned.[1] The most relevant motion is the second motion

---

[1]

This action was filed on January 10, 1997 and assigned to Judge Cerezo. (Docket entry #1). Three months later the case was reassigned to Senior Judge Raymond Acosta. (Docket entry #7). He in turn eventually returned the case to Judge Cerezo because it was not of the same category and complexity of the case exchanged. (Docket entry #10). After multiple procedural events; which included the filing of three motions to dismiss, a request for a preliminary injunction, an amended complaint, the disposition of the first two motions to dismiss and the motion for a preliminary injunction; the defendant requested Judge Cerezo's recusal, which she granted. (Docket entries #8, 18, 21, 22, 29, 39, 40, 49, 58 & 59). Consequently, the case was randomly reassigned to the undersigned. (Docket entry #60).

**CIVIL NO. 97-1036 (GG)**                                        3

wherein the defendant asserted the immunity from suit afforded to the states by the Eleventh Amendment.  In a well-drafted order, Judge Cerezo denied the motion basically holding that the Commonwealth did not subsidize nor was directly responsible for the payment of the legal claims against the CRUV or the Office for the Liquidation of the Accounts of the Puerto Rico Urban Renewal and Housing Corporation ("the Office").  Thus, that since the defendant had financial independence from the state it could not raise the Eleventh Amendment defense.  **See**, Order, docket entry #39.

Approximately two weeks after the second motion to dismiss was disposed of, the defendant filed a third motion to dismiss informing the court and the plaintiffs that a month and a half ago the Legislature of Puerto Rico had enacted Act 106 of June 30, 1998 which dissolved the Office and transferred the CRUV's assets to the Department of Housing of the Commonwealth of Puerto Rico (the Department).  Based on this, dismissal was requested because since the Office no longer existed, proceedings could not continue against it and since the real party in interest was an arm of the state, it was entitled to the Eleventh Amendment immunity defense.  (Docket entry #43).  The plaintiffs responded by requesting the substitution of the Department, pursuant to Rule 25(d)(1) of the Fed.R.Civ.Proc. In addition, they argue that Act 106 made it clear that the assets transferred to the Department are not considered assets of the Commonwealth because they have to respond for all pending liabilities

CIVIL NO. 97-1036 (GG)                                                    4

and adverse judgments of the CRUV.  In sum, the plaintiffs argue that

the action did not abate by the closing of the Office and that the

transfer of assets to the Commonwealth did not oust this court of

jurisdiction to entertain this action. (Docket entries #47 & 48).

Immediately, the Commonwealth appeared by filing an amended

third motion to dismiss arguing that the Department cannot be

substituted as the defendant because it lacks capacity to sue and be

sued separately from the Commonwealth.  Ergo, that the proper party

defendant is the Commonwealth.  Obviously, it then proceeded to claim

the Eleventh Amendment immunity.  (Docket entry #49).


## PUERTO RICO URBAN RENEWAL AND HOUSING CORPORATION


The Puerto Rico Urban Renewal and Housing Corporation (CRUV) was

a public corporation created by Act 88 of June 22, 1957 responsible,

among other things, of administering and developing low-cost private

housing construction.  **See**, Section 1 of Act 88, *supra*.  With the

passage of time, the purposes for which the CRUV was created were not

being properly accomplished by said corporation.  Worst of all, the

Housing Department of the Commonwealth was already accomplishing the

CRUV's functions.  Eventually, in 1991 the Legislature of Puerto Rico

decided to dissolve the CRUV.  This was achieved by means of Act 55

of August 9, 1991, which provided for the orderly liquidation of the

CRUV's accounts in order to meet the greatest number of its financial

**CIVIL NO. 97-1036 (GG)**                                                      5

responsibilities using its own resources.  Accordingly, the Office

for the Liquidation of the Accounts of the Puerto Rico Urban Renewal

and Housing Corporation was created.  **See**, Article 1 of Act 55,

*supra*, 17 L.P.R.A. §27.  The Office was granted  authority to sue and

be sued.  **See**, Article 9 of Act 55, *supra,* 17 L.P.R.A. §27h.

From its inception it was well known that the existence of the

Office was temporary while the process of liquidation was properly

concluded and that the files, records and any other documents of the

CRUV and the Office were to be transferred to the Department of

Housing.  **See**, Article 19 of Act 55, *supra*, 17 L.P.R.A. §27r; Pagán

v. E.L.A., 131 D.P.R. 795, 812-13 (1992).  At that point no one

imagined that the liquidation of the CRUV would produce any surplus.

However, by 1995 the Office had substantially carried out the

legislative mandate of August 9, 1991 and it reported the existence

of approximately one hundred million dollars ($100,000,000.00) of

surplus, which were then started to be transferred to the

Commonwealth's General Fund. **See**, Statement of Motives of Act 181 of

August 12, 1995, 17 L.P.R.A. §27q[2]; Report of the Urban Development,

Housing and Government Commissions of the House of Representatives,

H.R. Rep. No. 1400. Twelve million dollars ($12,000,000.00) were

transferred during 1995-96 and approximately five million dollars

---

[2]
      The transfer was limited to those monies not used in attending
to the Office's obligations nor needed to continue the payment of its
recurrent obligations and operating expenses.  *Id.*

**CIVIL NO. 97-1036 (GG)**                                                    6

($5,000,000.00) were transferred during 1997. **See**, Report of the

Urban Development, Housing and Government Commissions of the House of

Representatives, H.R. Rep. No. 1400, p. 16.

By January 22, 1998, the House of Representatives presented H.R.

No. 1400 which provided for the dissolution of the Office and the

official designation of the Department of Housing as the legal heir

of the assets, documents and pending liabilities of the Office. **See**,

Article 5 of H.R. No. 1400 of January 22, 1998.  The bill was then

sent to the House Commissions on Urban Development, Housing and

Government who celebrated public hearings on February 5, 1998. **See**,

H.R. Rep. No. 1400 of February 10, 1998, p. 4. Five days afterwards

the commissions issued their report suggesting several amendments.

*Id.* at 3.  Finally, on June 20, 1998, the legislature approved H.R.

No. 1400 which then became Act 106, *supra*. The act came into force on

June 30, 1998.  Pursuant to the dispositions of the act the Office

ceased to exist immediately and all of its records, assets and

pending liabilities were transferred to the Housing Department.

Specifically, the act ordered the transfer to the General Fund of all

cash remaining, which approximately amounted to ten million dollars

($10,000,000.00).  Furthermore, it created a three million dollars

($3,000,000.00) Special Independent Fund to subsidize the necessary

and convenient expenses related to the properties that were to be

transferred to the Department. Contrary to previous versions and

amendments, Act 106 mandated that the Department be obliged to

**CIVIL NO. 97-1036 (GG)**                                              7

satisfy any adverse judgments from the Special Independent Fund or
the Commonwealth's General Fund. **See**, Article 7 and Statement of
Motives of Act 106, *supra*.


## SUBSTITUTION OF THE DEFUNCT DEFENDANT


The plaintiffs request that the Office be substituted by the
Department of Housing pursuant to Rule 25(d)(1) of the
Fed.R.Civ.Proc. and argue that such substitution does not deprive
this court of jurisdiction for it was established when the case was
originally filed and subsequent events cannot serve to deprive us of
the same. The defendant opposes arguing that the proper party
defendant is the Commonwealth and not the Department of Housing. It
also argues that the plaintiffs' insistence that the Office's
successor cannot claim the Eleventh Amendment immunity because, being
the same as subject matter jurisdiction, it is determined as of the
filing of the complaint, is erroneous.

Rule 25 of the Fed.R.Civ.Proc. provides for the substitution of
parties under different scenarios. Specifically, we turn our
attention to Rules 25(c) and 25(d)(1), which in their pertinent
parts provide as follows:

> Rule 25(c) Transfer of Interest. In case of any
> transfer of interest, the action may be
> continued by or against the original party,
> unless the court upon motion directs the person
> to whom the interest is transferred to be
> substituted in the action or joined with the

CIVIL NO. 97-1036 (GG)                                                    8

> original party....
>
> Rule 25(d)(1)  Public  Officers;  Death  or
> Separation from Office.
> When a public officer is a party to an action in
> his official capacity and during its pendency
> dies, resigns, or otherwise ceases to hold
> office, the action does not abate and the
> officer's successor is automatically substituted
> as  a  party.  Proceedings  following  the
> substitution shall be in the name of the
> substituted party....

By its own terms, Rule 25(d)(1) is applicable in cases where the action is brought against a public officer in his official capacity. In reality, the action is against the governmental agency he/she represents. That is why, when said officer ceases to hold office or dies, the cause of action does not abate and substitution is automatic. **See**, <u>Cabrera v. Municipality of Bayamón</u>, 622 F.2d 4 (1st Cir. 1980); 7C Wright, Miller & Kane, <u>Federal Practice and Procedure, Civil 2d</u>, §1960. In contrast, Rule 25(c) comes into action when there is a transfer of interest (*e.g.* transfers, assignments, mergers) during the pendency of an action. If instead a corporation is wholly dissolved, the action will usually abate unless a state law provides differently. Hence, if the substantive law allows the action to continue against those to whom the assets of the dissolved corporation have been transferred, Rule 25(c) becomes applicable. **See**, 7C Wright, Miller & Kane, *supra*.

In the case before us, the original named defendant was the Special Trustee, in his official capacity, for the action was in reality against the Office for those acts committed by the CRUV.

**CIVIL NO. 97-1036 (GG)**                                          9

**See**, Articles 4 & 9 of Act 55 of August 9, 1991. Contrary to what is contemplated under Rule 25(d)(1), the Trustee ceased to hold said position because, by disposition of Act 106, *supra*, the Office was wholly dissolved and all of its assets and liabilities were transferred to the Department of Housing. Notwithstanding the above, Act 106 provided that any pending lawsuits against the CRUV or the Office would not abate but would continue against the Department of Housing. **See**, Article 7 of Act 106, *supra*. Therefore, in strict procedural terms, we understand that the rule of substitution more suitable under these circumstances is Rule 25(c).

Nonetheless, substitution, under either of these rules which are merely procedural devices, does not affect the substantive issues of the case nor the substantive rights of the parties. **See**, 7C, Wright and Miller, *supra*. **See also**, In the Matter of Covington Grain Co., 638 F.2d 1357 (5th Cir. 1981); *In re Papst Licensing GmbH Patenet Litigation*, 2001 WL 725355, 2 (E.D.La. Jun. 22, 2001); Jazzland, Ltd. v. Bordenave, 1999 WL 243820, 2 (E.D.La. Apr. 22, 1999). In other words, our analysis must continue.

**ELEVENTH AMENDMENT IMMUNITY**

The Eleventh Amendment provides that:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against on of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

CIVIL NO. 97-1036 (GG)                                             10

State."

Early in the history of this amendment it was clearly established
that it barred a citizen from bringing a suit against his own state
in federal court, even though the express terms of the Amendment do
not so provide. **See**, <u>Hans v. Louisiana</u>, 134 U.S. 1, 10 S.Ct. 504, 33
L.Ed. 842 (1890).  In other words, an unconsenting state[3] is immune
from suits brought by its own citizens as well as citizens in other
states. **See**, <u>Edelman v. Jordan</u>, 415 U.S. 651, 657 & 677 94 S.Ct.
1347, 39 L.Ed.2d 662 (1973).

The immunity extends likewise to an arm or *alter ego* of the
state. **See**, <u>Edelman v. Jordan</u>, *supra*; <u>Neo Gen Screening, Inc. v. New
England Newborn Screening Program</u>, 187 F.3d 24, 26 (1st Cir. 1999);
<u>Royal Caribbean Corp. v. Puerto Rico Ports Authority</u>, 973 F.2d 8 (1st
Cir. 1992). This is so because, at the core of the Eleventh Amendment
is the basic rule that suits seeking retrospective monetary relief
against the state treasury are barred. **See**, *Id.*; <u>Fred v. Roque</u>, 916
F.2d 37, 38 (1st Cir. 1990); <u>Hernández Tirado v. Artau</u>, 874 F.2d 866,
872 (1st Cir. 1989); <u>Echevarría v. González Chapel</u>, 849 F.2d 24, 32
(1st Cir. 1988).  Hence, regardless of whether the named defendant is
the state, a state's officer in his official capacity or an

---

[3]

It is well established that the principles of the amendment are
fully applicable to the Commonwealth of Puerto Rico to the same
extent as any state. **See**, <u>U.S.I. Properties Corp. v. M.D.
Construction Co.</u>, 230 F.3d 489, 494 n.3 (1st Cir. 2000); <u>Ortiz
Feliciano v. Toledo Davila</u>, 175 F.3d 37, 39 (1st Cir. 1999); <u>Ezratty
v. Puerto Rico</u>, 648 F.2d 770, 776 n. 7 (1st Cir. 1981); <u>Ramírez v.
Puerto Rico Fire Service</u>, 715 F.2d 694, 697 (1st Cir. 1983).

CIVIL NO. 97-1036 (GG)                                           11

instrumentality of the state, if the action is in essence one for the
recovery of money from the state's treasury, the state is the real,
substantial party in interest and is entitled to invoke its Eleventh
Amendment immunity from suit. **See**, <u>Regents of the University of
California v. Doe</u>, 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55
(1997). **See also**, <u>1 Federal Procedure, Access to District Courts</u>,
L.Ed., §1:478, p. 379.

Unfortunately, it is not always limpid whether state agencies
and institutions are to be treated as arms or *alter egos* of the
State, partaking from its Eleventh Amendment immunity, or as
municipal corporations or other political subdivisions to which the
Eleventh Amendment do not extend. **See**, <u>Ainsworth Aristocrat Int'l</u>
<u>Pty. Ltd. v. Tourism Co. of Puerto Rico</u>, 818 F.2d 1034, 1036 (1st Cir.
1987), <u>De León López v. Corporación Insular de Seguros</u>, 931 F.2d 116,
120 (1st Cir. 1991). Several factors have been adopted to make this
determination. Still, the most important one is whether the fisc of
the state would have to respond for any judgment against the named
defendant. **See**, <u>Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority</u>,
991 F.2d 935 (1st Cir. 1993).

In this case, we need not dwell too much on this issue. The
Supreme Court of the Commonwealth of Puerto Rico has explicitly held
that the Department of Housing is an executive department of the
government that lacks separate and distinct juridical personality
from the Commonwealth. In other terms, that the Department is an arm
of the Commonwealth. **See**, <u>Fred Reyes v. E.L.A.</u>, 150 D.P.R. ____

AO 72A
(Rev.8/82)

CIVIL NO. 97-1036 (GG)                                                        12

(2000); 2000 T.S.P.R. 49. Likewise, Act 106 entitled the Department
to raise the same defenses used by the Office in the case of any
litigation or claim related to the transferred assets, and bestowed
upon it the same rights and faculties as the Office, except the
capacity to sue or be sued. **See**, Article 7 of Act 106, *supra*. *Cf.*
Rivera Maldonado v. E.L.A., 119 D.P.R. 74, 82 (1987) (holding that
the Department of Recreation and Sports has limited juridical
personality because it was granted by law the capacity to sue and be
sued, which constituted a waiver of the sovereign immunity). Hence,
the legislator carefully drafted Act 106 so that there would be no
doubt that, even in matters related to the CRUV, the Department is
not separate and distinct from the Commonwealth but an arm of the
state.

     This is even more so in view of the legislator's explicit
mandate that the Department be obliged to satisfy any adverse
judgment to be charged to the Special Independent Fund or the General
Fund, subject to prior authorization from the Budget and Management
Office. **See**, Article 7 of Act 106, *supra.* Clearly, the Commonwealth's
fisc is responsible for any adverse judgment in this case.    In
conclusion, the real and substantial party in interest in this case
is the Commonwealth.


**WAIVER OF IMMUNITY**


     There are certain exceptions to the reach of the Eleventh

CIVIL NO. 97-1036 (GG)                                              13

Amendment.  For instance, if a state waives its immunity and consents

to suit in federal court, the Eleventh Amendment does not bar the

action. **See**, Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 883,

27 L.Ed. 780 (1883). After all, the State's sovereign immunity is a

personal privilege which it may waive at pleasure.  *Id.* However, the

test for finding that a state has waived its Eleventh Amendment

immunity is a stringent one. **See**, College Savings Bank v. Florida

Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 675-677,

119 S.Ct. 2219, 2226 (1999).

A waiver of a state's constitutional immunity may be effectuated

by a state statute or constitutional provision. Still, there must be

an unequivocal indication that the state intends to consent to

federal jurisdiction that otherwise would be barred by the Eleventh

Amendment. **See**, Pennhurst State School & Hospital v. Halderman, 465

U.S. 91, 99, 104 S.Ct. 900 (1983). Put in other terms, the state must

make a clear declaration that it intends to submit itself to the

federal jurisdiction. **See**, Great Northern Life Ins. Co. v. Read, 322

U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944).  "Constructive

consent is not a doctrine commonly associated with the surrender of

constitutional rights." Edelman v. Jordan, *supra.* Hence, since the

Eleventh Amendment implicates the fundamental constitutional balance

between the Federal Government and the States, it has been

consistently held that a state will be deemed to have waived its

immunity only where stated by the most express language or by such

overwhelming implication from the text as will leave no room for any

Case 3:97-cv-01036-GG    Document 69    Filed 10/29/2001    Page 14 of 17


**CIVIL NO. 97-1036 (GG)**                                                    14

other reasonable construction. **See**, *Id.*; Atascadero State Hospital v. Scanlon, 473 U.S. 234, 237-241, 105 S.Ct. 3142, 3145-46, 87 L.Ed.2d 114 (1985); Ortiz Feliciano v. Toledo Davila, 175 F.3d at 39.

After a thorough examination of both the legislative history and the text of Act 106, we find that nothing in it shows a waiver of the Commonwealth's Eleventh Amendment immunity. First, Act 106 is totally devoid of any express language that it intends to submit to the federal jurisdiction. On the same vein, the fact that the legislator mandated that none of the pending legal actions inherited by the Department would abate is insufficient to constitute a constructive waiver of the Commonwealth's Eleventh Amendment immunity. That the cause of action remains alive after the dissolution of the Office and that it may continue against the state is not synonymous to a waiver of the immunity against the prosecution of an action in federal court. As the defendant indicated in it's motion, the cause of action may continue but in state court.

On the other hand, there is no language in the act to sustain the plaintiffs' theory that the Commonwealth's treasury will not respond for any judgment against the Department because only the assets of the CRUV will respond. We concede that it was initially intended for the Housing Department to satisfy any adverse judgment that it inherited from the Office, exclusively from a special independent fund created with the assets so inherited. **See**, Article 5 of H.R. No. 1400 of January 22, 1998. However, the final version of H.R. No. 1400, which became Act 106, distinctly mandated that the

CIVIL NO. 97-1036 (GG)                                                    15

Department be obliged to satisfy any adverse judgment from the
Special Independent Fund **OR** the Commonwealth's General Fund.  **See,**
Article 7 and Statement of Motives of Act 106, *supra*.  The legislator
did not include any limiting language to the effect that the
Commonwealth's exposure would be circumscribed to any specific amount
or to the cash or assets inherited from the CRUV.  It simply stated
in general terms that the General Fund would respond for the payment
of judgments against the CRUV.

   In conclusion, we find that Act 106 does not contain any express
language constituting a waiver nor any overwhelming implication or
unequivocal indication of such a waiver.


**SUBJECT MATTER JURISDICTION VS. 11TH AMENDMENT**


   Although Eleventh Amendment questions are often labeled
jurisdictional and as a limitation of Article III judicial power, it
cannot be treated the same as subject matter jurisdiction as the
plaintiffs invite us to do.  We are cognizant that the U.S. Supreme
Court has never resolved whether, or to what extent, Eleventh
Amendment immunity is a matter of subject matter jurisdiction.  See,
Winsconsin Department of Corrections v. Schacht, 524 U.S. 381, 118
S.Ct. 2047, 2054, 141 L.Ed.2d 364 (1998).  Still, the amendment
differs in several crucial ways from ordinary restrictions on subject
matter jurisdiction.  **See,** Parella v. Ret. Bd. of the Rhode Island
Employees' Retirement System, 173 F.3d 46, 54 (1st Cir. 1999).

**CIVIL NO. 97-1036 (GG)**                                              16

Specifically, the immunity, contrary to subject matter jurisdiction, can be waived by the state and the court is not obliged to raise the question *sua sponte*. <u>Schacht</u>, at 389. Hence, the plaintiffs invitation to adopt and make extensive to an Eleventh Amendment scenario the well-established principle of subject matter jurisdiction that "diversity is established at the inception of the case" in a desperate attempt to establish that a subsequent change in defendant cannot oust the court of jurisdiction, is unpersuasive and inappropriate.

The fact that the original defendant, the Special Trustee, could not assert the Eleventh Amendment defense cannot serve to automatically dispossess the sovereign from asserting a constitutional protection and privilege to which it is entitled. The contrary could implicate that someone besides the sovereign may waive, without the sovereigns express consent, his immunity. Undoubtfully, our system could not tolerate such a result.

In sum, we hold that the Special Trustee must be and is hereby substituted by the Department of Housing, an arm of the Commonwealth of Puerto Rico. Furthermore, that the Commonwealth, as the real party defendant, may invoke the protection of the Eleventh Amendment immunity and that since it has not waived said protection by means of Act 106, this case must be dismissed.

**WHEREFORE**, for all the reasons herein stated, the defendant's Amended Third Motion to Dismiss is **GRANTED**. Accordingly, this case is **DISMISSED WITHOUT PREJUDICE** of being filed in state court.

**CIVIL NO. 97-1036 (GG)**                                                    17

Judgment must be entered accordingly.

      **SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of October, 2001.

GILBERTO GIERBOLINI
Senior U.S. District Judge

AO 72A
(Rev.8/82)